IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| CALLAWAY BLUE BOTTLING, LLC, | * | |
| Plaintiff, | * | |
| vs. | * | CASE NO. 4:25-cv-177 (CDL) |
| BUSSE/SJI, LLC, | * | |
| Defendant. | * | |

O R D E R

Callaway Blue Bottling, LLC filed this action in state court asserting breach of contract and tort claims against Busse/SJI, LLC. Busse removed the action to this Court but contests venue based upon a forum selection clause to which it claims the parties agreed. It has accordingly filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3) for improper venue or, alternatively, to transfer venue to the United States District Court for the Western District of Wisconsin pursuant to 28 U.S.C. § 1404(a). Because a genuine factual dispute exists regarding whether the parties agreed to the forum selection clause, Busse's motion (ECF No. 25) is denied.

FACTUAL BACKGROUND

Callaway Blue, a Georgia corporation, manufactures and distributes bottled natural spring water at its bottling plant in Hamilton, Georgia. Am. Compl. ¶ 1, ECF No. 15. Busse, a Wisconsin

corporation, manufactures and installs assembly line equipment for large volume beverage manufacturers. *Id.* ¶ 3. Callaway Blue contacted Busse to inquire about purchasing assembly line equipment for use in its Hamilton plant. *Id.* ¶ 8.

After several weeks of discussion, Busse produced a document addressed to Callaway Blue titled "Proposed Solution." *Id.* ¶ 15; Am. Compl. Ex. A, Proposed Solution, ECF No. 15-1 at 2.[1] The proposal is dated October 11, 2023, and specifies that it is "Proposal #44888BBS-05." Proposed Solution, ECF No. 15-1 at 2. The proposal, which states that it "constitute[s] the complete and entire proposal pertaining to the subject matter hereof," provides descriptions of the equipment that Busse proposed to meet Callaway Blue's bottling plant needs and represents that the equipment can move bottles along an assembly line at a rate of 600 bottles per minute. *Id.*, ECF No. 15-1 at 5, 8. The document also includes the quantity and price of the equipment, a proposed payment schedule, shipping terms, and an equipment warranty. *Id.*, ECF No. 15-1 at 4-5, 21, 22.

Regarding the equipment, the proposal states that Busse "reserves the right to re-review any [of Buyer's] specifications upon receipt of order commitment to ensure all pricing and specifications are followed prior to order entry and acceptance."

---

[1] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

*Id.*, ECF No. 15-1 at 6. The proposal also requests that a "customer . . . present" its own "Terms and Conditions in advance of [its] Purchase Order" and advises that Busse's "[a]cceptance of [an] order is subject to review based on [Seller]'s 'Standard Supplier Terms and Conditions.'" *Id.*, ECF No. 15-1 at 4, 22.

The Appendix of Busse's proposal also provides the following regarding Busse's terms and conditions:

> THIS PROPOSAL AND ANY SALE BASED ON THIS QUOTATION ARE SUBJECT EXCLUSIVELY TO BUSSE/SJI LLC'S (SELLER) STANDARD TERMS AND CONDITIONS OF SALE AVAILABLE ON SELLER'S WEBSITE AT https://www.automation-solutions.com/terms-conditions/ (THE "TERMS AND CONDITIONS OF SALE WEB PAGE"). . . . SELLER REJECTS TERMS AND CONDITIONS IN AN ORDER, RELEASE UNDER AN ORDER, OR OTHER FORM OR COMMUNICATION FROM CUSTOMER[] OR CUSTOMER'S CLIENTS THAT ARE ADDITIONAL TO OR DIFFERENT FROM SELLER'S TERMS AND CONDITIONS OF SALE.

*Id.*, ECF No. 15-1 at 22. The terms and conditions found on Busse's web page included the following provisions:

- 2. <u>Acceptance</u>: Seller's proposal or quotation (the "proposal") and any purchase order issued by Buyer and accepted by Seller are limited to these terms and conditions, which are incorporated into the proposal, and excludes any different or additional terms and conditions supplied by Buyer, unless agreed to in writing by Seller. If, for Buyer's convenience, Buyer's regular purchase order forms are used in connection with the proposal or in ordering equipment or services covered by the proposal, Seller's acceptance is expressly conditioned upon Buyer's assent to these terms and conditions . . . . [A]ny purchase order accepted by Seller [is] incorporated into the proposal.

- 28. <u>Governing Law; Jurisdiction</u>. All matters arising out of or relating to these terms and conditions are governed by and construed in accordance with the internal laws of the State of Wisconsin . . . . Any legal suit, action or proceeding arising out of or relating to the proposal shall be instituted

3

> in the state or federal courts located in Wisconsin and each party irrevocably submits to the jurisdiction of such courts in any such suit, action or proceeding.

Pearson Decl. Ex. A, Terms and Conditions ¶¶ 2, 28, ECF No. 25-1.[2] The proposal contains no signature lines, and Callaway Blue never signed that document.

Several days after receiving the Proposed Solution, Callaway Blue submitted a purchase order to Busse on Callaway Blue letterhead. The purchase order lists the equipment that Busse described in its proposal, including a bulk palletizer and infeed equipment, and states Callaway Blue's desire to purchase that equipment for a price of $1,280,630.00, a total which aligns with the prices reflected in the proposal. Am. Compl. Ex. B., Purchase Order, ECF No. 15-2 at 2. The purchase order also states that it is "[b]ased on Busse/SJI LLC . . . Proposal #44888BS-05 Dated October 11, 2023[,]" and includes a payment schedule almost identical to that in the proposal. *Id.* The purchase order contains no other terms.

On December 1, 2023, Busse sent a follow-up letter which requested Callaway Blue's approval of certain items related to the equipment referenced in the purchase order. Am. Compl. Ex. C,

---

[2] "[T]he Court may consider materials outside the pleadings without converting a Rule 12(b)(3) motion to dismiss to a motion for summary judgment." *Liles v. Ginn-La W. End, Ltd.*, 631 F.3d 1242, 1244 n.5 (11th Cir. 2011).

4

Customer Approval Letter 1, ECF No. 15-3. That letter states as follows:

> In order for us to proceed with your project, Busse/SJI requires your review and approval of the following items: layout drawing, product data, and equipment paint color requirements. **Please indicate approval of these items by placing your initials in the blanks provided below and return no later than December 8, 2023.** Purchase orders accepted by Busse/SJI may not be cancelled or modified by Buyer without the prior written consent of Busse/SJI. In the event Busse/SJI has accepted Customer's purchase order, Customer may not change its purchase order unless Busse/SJI accepts in writing any change(s) requested by Customer (whereby Busse/SJI reserves the right to revise the price and delivery schedule).

*Id.* The letter recites the payment schedule contained in the purchase order and includes billing, shipping, and installation information, equipment specifications, and an equipment warranty. *Id.* at 1-7. The last page of the letter states that "BUSSE/SJI ("SELLER") HEREBY ACCEPTS BUYER'S[] PURCHASE ORDER[] SUBJECT EXCLUSIVELY TO SELLER'S TERMS AND CONDITIONS" and provides a signature line for a Callaway Blue representative to affirm that they "reviewed and approve the Terms and Conditions." *Id.* at 8. Callaway Blue never signed the letter. Am. Compl. ¶ 19.

Busse proceeded with the equipment delivery and installation at the Hamilton plant in late 2024. *Id.* ¶¶ 19-20. Once installed, the equipment was "riddled with production flaws" and could not move Callaway Blue's bottles along the assembly line at the promised rate of 600 bottles per minute. *Id.* ¶ 20. Callaway Blue

5

eventually removed the equipment from its production line and sent written notice to Busse of its intention to rescind the equipment contract. Am. Compl. Ex. D, Rescission Letter (May 8, 2025), ECF No. 15-4 at 2-5.

## MOTION TO DISMISS STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3), "[t]he facts as alleged in the complaint are taken as true, to the extent they are uncontroverted by [the] defendant['s] affidavits." *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988). "[W]hen there is a battle of affidavits placing different constructions on the facts, the court is inclined to give greater weight, in the context of a motion to dismiss, to the plaintiff's version, particularly when the jurisdictional questions are apparently intertwined with the merits of the case." *Id.*

## DISCUSSION

Callaway Blue alleges that Busse knowingly mispresented that its palletizer could operate at a 600 bottle per minute rate and brings claims against Busse for fraud in the inducement, breach of contract, and breach of state law warranties.[3] Pointing to the forum selection clause incorporated by reference into the Proposed

---

[3] Callaway Blue additionally seeks attorney fees under O.C.G.A. § 13-6-11 and punitive damages.

Solution, Busse argues that this action should be dismissed or transferred to a federal court in Wisconsin.

As an initial matter, the Court cannot dismiss this action as Busse requests in its Rule 12(b)(3) motion, because that Rule allows dismissal "only when venue is 'wrong' or 'improper'" under the federal venue laws. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). Venue is proper here because "a substantial part of the events or omissions giving rise to" Callaway Blue's claims occurred in Harris County, which is in the Middle District of Georgia. 28 U.S.C. § 1391(b); *Atl. Marine*, 571 U.S. at 56 ("Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in [28 U.S.C.] § 1391(b)."). Accordingly, Busse's motion to dismiss is denied.

The fact that venue is proper under the venue statute, however, does not prohibit the parties from contractually agreeing to another venue. The proper mechanism for effectuating the parties contractual intent is to transfer the action to the agreed upon venue. Specifically, a forum selection clause "may be enforced through a motion to transfer under [28 U.S.C.] § 1404(a)." *Atl. Marine*, 571 U.S. at 59. That provision authorizes district courts to "transfer any civil action to any other district or division where it might have been brought or to any district or

division to which all parties have consented." 28 U.S.C. § 1404(a). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause" except under "extraordinary circumstances unrelated to the convenience of the parties." *Atl. Marine*, 571 U.S. at 62.

It is undisputed that Callaway Blue never signed a written contract that included a forum selection clause. Busse argues that by incorporating by reference the forum selection clause from its website into its Proposed Solution, the forum selection clause became part of its "offer" which Callaway Blue "accepted" when it placed its purchase order for the equipment. Callaway Blue disputes that Busse's Proposed Solution plus Callaway Blue's purchase order constitutes the parties' contract. It maintains that its purchase order, which makes no mention of the forum selection clause, was not acceptance of Busse's offer, but was actually *the* offer and that Busse's delivery of the equipment was the acceptance. Thus, a dispute exists as to the issue of contract formation.

Contract formation should not be confused with contract interpretation, which is typically done by the Court by looking at the plain meaning of the contractual language and, when that language is ambiguous, relying upon accepted canons of contract construction to ascertain the meaning of particular words or

8

phrases. Contract formation involves a more foundational issue: what documents and actions constitute the actual contract, *i.e.*, what is the offer and the acceptance? For the parties to be bound, there must be mutual assent, which can only occur when one party accepts another party's offer. "In determining whether there was a mutual assent," Georgia law instructs courts to "apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent." *Thornton v. Uber Techs., Inc.*, 858 S.E.2d 255, 258 (Ga. Ct. App. 2021).[4] Sometimes this determination requires an examination of extrinsic evidence. "Where such extrinsic evidence exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury." *Id.*

Busse's argument that its proposal constitutes the offer has some support in the record. First, the proposal was addressed only to Callaway Blue. *See Sterling BV, Inc. v. Cadillac Prods.*

---

[4] Callaway Blue alleges that the acts giving rise to the contract occurred in Georgia. That state applies the rule of "lex loci contractus," under which "the validity . . . of a contract [is] governed by the substantive law of the state where the contract was made." *Fed. Ins. Co. v. Nat'l Distrib. Co., Inc.*, 417 S.E.2d 671, 673 (Ga. Ct. App. 1992). Therefore, the Court applies Georgia law to the contract formation issue.

*Packaging Co.*, No. 23-13195, 2025 WL 2206106, at *3 (11th Cir. Aug. 4, 2025) ("[T]he fewer people to whom a price quote is addressed, the more likely it is to be an offer.").[5] Also, the proposal came in response to Callaway Blue's inquiry regarding Busse's equipment. And, the proposal contained enough terms to function as an offer, including a detailed description of the goods, prices, a payment schedule, and the parties' responsibilities. *See 1 Williston on Contracts* § 4:10 (4th ed.) ("[W]here a price quotation in a letter contains detailed terms, it may well be deemed an offer in light of the specificity and completeness of the commercial terms in the letter.") (footnote omitted).

Other facts in the record, however, support Callaway Blue's position that Busse did not regard the receipt of Callaway Blue's purchase order to be acceptance of a binding offer. *See* Restatement (Second) of Contracts § 26 (1981) ("A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent."). For example, Busse's proposal stated that Busse "reserve[d] the right" to review any of

---

[5] The Court interchangeably refers to Busse's Proposed Solution as both a "proposal" and a "price quote," given that the document specifies the cost of the goods at issue and refers to itself as a "quotation." Proposed Solution, ECF No. 15-1 at 22.

Callaway Blue's specifications regarding the equipment "prior to order entry and acceptance" and further advised that its acceptance of Callaway Blue's purchase order was "subject to review" based on the Seller's terms and conditions. Proposed Solution, ECF No. 15-1 at 6, 22; *see Architectural Metal Sys., Inc. v. Consol. Sys., Inc.*, 58 F.3d 1227, 1230 (7th Cir. 1995) ("A person can prevent his [price quote] from being treated as an offer by suitable language conditioning the formation of a contract on some further step . . . such as approval by corporate headquarters."). Pertinently, the proposal also requested that a buyer submit its own terms and conditions "in advance of [its] Purchase Order," Proposed Solution, ECF No. 15-1 at 4, which suggests that further negotiation as to those terms would persist even after the submission of Callaway Blue's purchase order. Indeed, Busse's own Customer Approval Letter contained more conditional language ("In the event Busse/SJI has accepted Customer's purchase order . . .") and expressly declared that "BUSSE/SJI LLC ("SELLER") HEREBY ACCEPTS BUYER'S[] PURCHASE ORDER[]," Customer Approval Letter 1, 8, thereby indicating that Busse itself did not intend to be bound until it accepted Callaway Blue's offer to purchase its equipment.

Because the limited record before the Court reveals a genuine factual dispute about whether the parties agreed to the forum selection clause, this Court cannot decide that issue as a matter of law. It must be resolved by the factfinder, which under Georgia

11

law and the Federal Rules of Civil Procedure, contemplates a jury.[6] *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013) (instructing district courts to transfer cases pursuant to forum selection clauses only "[w]hen the parties have agreed to a valid forum-selection clause."); *Thornton v. Uber Techs., Inc.*, 858 S.E.2d 255, 258 (Ga. Ct. App. 2021) (Where "extrinsic evidence exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury."); Fed. R. Civ. P. 56(a) (Judgment as a matter of law appropriate only where "there is no genuine dispute as to any material fact").[7] Accordingly, Busse's motion to transfer venue is denied.[8]

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss or transfer (ECF No. 25) is denied. The discovery stay (ECF No. 27) is lifted, and the parties shall file a joint proposed scheduling order within 21 days after the entry of today's Order consistent with the requirements of the Court's previously issued Rules 16/26

---

[6] In light of this ruling, the Court finds it unnecessary to decide at this time whether the forum selection clause is unenforceable based upon fraud in the inducement.

[7] The parties have pointed to no binding precedent that would authorize a judge, instead of a jury, to resolve genuine fact disputes regarding contract formation such as those presented here.

[8] Busse does not argue that this action should be transferred to Wisconsin because it is a more convenient forum.

Order (ECF No. 6).  Busse's motion for a hearing on its motion to dismiss/transfer (ECF No. 32) is terminated as moot.

IT IS SO ORDERED, this 16th day of January, 2026.

                                            S/Clay D. Land
                                            CLAY D. LAND
                                            U.S. DISTRICT COURT JUDGE
                                            MIDDLE DISTRICT OF GEORGIA